MORGAN *v.* McDERMOTT.

OPINION OF THE COURT.

1. NEGLIGENCE—JOINT TORT-FEASORS—CONTRIBUTION—STATUTE.

Joint tort-feasors who are summoned as third-party defendants pursuant to court rule may be held liable for contribution (CLS 1961, § 600.2925).

2. SAME—THIRD-PARTY DEFENDANTS—IMPLEADER—COURT RULE.

A defendant in a civil action may move for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may thereafter be liable to such third-party plaintiff by right to contribution or otherwise for all or part of the plaintiff's claim against him (GCR 1963, 204.1[1]).

3. CONTRIBUTION—PARTIES—COURT RULES.

Court rule allowing impleader of third-party defendant creates no substantive rights; the substantive right of third-party

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 23] 18 Am Jur 2d, Contribution § 73 *et seq.*
Liability of carrier for injuries to person boarding vehicle or ship for social or other purposes in connection with a passenger. 11 ALR2d 1075.
[4] 18 Am Jur 2d, Contribution § 82.
[5, 6, 10, 11] 39 Am Jur 2d, Highways, Streets and Bridges § 347 *et seq.*
[7–10, 12, 13, 16, 17, 27, 35–37] 39 Am Jur 2d, Highways, Streets and Bridges § 411 *et seq.*
[14, 15] 50 Am Jur 2d, Statutes § 345 *et seq.*
[18, 20, 21] 18 Am Jur 2d, Contribution § 102.
[19] 39 Am Jur 2d, Highways, Streets and Bridges § 202 *et seq.*
[22] 18 Am Jur 2d, Contribution § 1 *et seq.*
[24] 18 Am Jur 2d, Contribution § 7 *et seq.*
[25] 18 Am Jur 2d, Contribution § 74.
[26] 18 Am Jur 2d, Contribution § 51.
[28–30, 32] 18 Am Jur 2d, Contribution § 77.
[31] 5 Am Jur 2d, Appeal and Error § 1011.
[33] 18 Am Jur 2d, Contribution § 64.
[34] 18 Am Jur 2d, Contribution § 2 *et seq.*

plaintiff to contribution from third-party defendant is part of the rights and liabilities of the parties as determined by the law as it stood when the causes alleged by plaintiff accrued (GCR 1963, 204).

4. SAME—JOINT TORT-FEASORS—JUDGMENT.

A money judgment must first be recovered before the statutory right to contribution from a joint tort-feasor comes into existence (CLS 1961, § 600.2925).

5. HIGHWAYS—CONSTRUCTION AND MAINTENANCE—LIABILITY—TOWNSHIPS.

A township, city, village, or corporation may be held liable for damages arising out of a failure of performance of the duty relating to construction and maintenance of highways only under provisions of statute creating such liability, there being no common-law liability for personal injuries or damages with respect to construction and maintenance of highways (CL 1948, § 242.1 et seq.).

6. SAME—CONSTRUCTION AND MAINTENANCE—LIABILITY—COUNTIES.

The liability of a county for personal injury damages occasioned by breach of duty appertaining to the construction or maintenance of a county road is governed by the provisions of law respecting the liability of townships, cities, villages, and corporations for damages arising out of breach of the same duty with respect to their roads (CLS 1961, § 224.21).

7. SAME—CONSTRUCTION AND MAINTENANCE—INJURY—60-DAY NOTICE—COUNTIES.

The general highway law requires that written notice of injuries sustained because of defective condition of county highways be served upon the board of county road commissioners within 60 days from the time of the happening of such injury (CLS 1961, § 224.21).

8. SAME—INJURY—60-DAY NOTICE.

The requirement of written notice within 60 days of an injury caused by defective condition of a highway or sidewalk within a city has been held by the Supreme Court to be mandatory and an essential element in the statutorily created cause of action for such injuries; a similar requirement is equally applicable to actions against boards of county road commissioners arising from defective highways under the board's jurisdiction (CLS 1961, § 224.21).

9. SAME—DEFECTS—GOVERNMENTAL IMMUNITY—60-DAY NOTICE.

Third-party plaintiffs cannot prevail in action for contribution from third-party defendant board of county road commissioners where governmental immunity of county with respect to actions arising out of construction and maintenance of county roads has been statutorily waived, since third-party plaintiffs are barred by failure to give a 60-day notice required by the statute (CLS 1961, § 224.21).

10. NEGLIGENCE—JOINT TORT-FEASORS—COMMON LIABILITY—GOVERNMENTAL IMMUNITY—60-DAY NOTICE.

Common liability may be assumed to arise at the time of an accident between third-party plaintiffs and third-party defendants in the ordinary joint tort-feasor case, but where the board of county road commissioners is the third-party defendant and the doctrine of governmental immunity is involved, an assumption of common liability is not warranted because the road commissioners are not liable to anyone unless the statutory 60-day notice requirement is satisfied (CLS 1961, §§ 224.21, 600.2925).

11. HIGHWAYS—CONSTRUCTION AND MAINTENANCE—COMMON LAW—STATUTES—DUTY OF CARE—BREACH.

Construction and maintenance of public roads is for the benefit of the traveling public and no rights in the individual user as to the condition of highways existed before statute creating such rights; thus, at common law there was no duty of road maintenance owing to an individual which would support an action for breach of duty (CLS 1961, § 224.21).

12. SAME — STATUTES — NEGLIGENCE — GOVERNMENTAL IMMUNITY — JOINT TORT-FEASORS—60-DAY NOTICE.

Absent statutory authority a county has governmental immunity and cannot be liable for its torts nor can it be held liable as a joint tort-feasor except to the extent the shield of immunity has been statutorily removed, and where the condition of liability of the board of county road commissioners for negligence in maintaining county roads is a 60-day notice requirement, no liability arises until the 60-day notice requirement is fulfilled (CLS 1961, § 224.21).

13. NEGLIGENCE—GOVERNMENTAL IMMUNITY—JOINT TORT-FEASORS—60-DAY NOTICE.

A county's immunity from its torts until the 60-day notice requirement is satisfied is not lost when the county is a joint tort-feasor rather than a sole tort-feasor (CLS 1961, § 224.21).

14. Statutes—Common Law—Action.

Statutes in derogation of the common law are to be strictly construed, and one who seeks to maintain an action which was within the prohibition of the common law must be able to point to a statute which in plain and explicit terms authorizes the action to be maintained.

15. Action—Statutes in Derogation of the Common Law.

One asserting a statutory right of action in derogation of the common law must establish that he is within the terms of the statute.

16. Negligence—Joint Torts—Statutes—Governmental Immunity—60-Day Notice—Contribution.

The common-law liability of a county, if it ever existed, for its joint torts has been changed by a statute which requires notice within 60 days of injury; thus, a county only has statutory liability for its joint torts and the terms of the statute must be met by a third-party plaintiff seeking contribution from the county as a joint tort-feasor (CLS 1961, § 224.21).

17. Same—Liability—Damage—60-Day Notice.

The 60-day notice requirement is a condition to any liability of a county for damages sustained by any person, either to his person or property by reason of any defective county road, bridge, or culvert (CLS 1961, § 224.21).

Dissenting Opinion.

Dethmers and Black, JJ.

18. Contribution — Third-Party Action — Joint Tort-Feasors — Judgment — Right of Action.

*The time for determining whether the primary defendants are possessed of an accrued right of contribution against the third-party defendant is when the primary defendants and third-party defendant have been adjudged joint tort-feasors and the primary defendants have satisfied any judgment which has been entered in favor of plaintiff at trial (CLS 1961, § 600-.2925).*

19. Highways — Board of County Road Commissioners — Joint Tort-Feasors — Contribution.

*County road commission which negligently fails to properly maintain county roads may be held liable as a joint tort-feasor to a plaintiff for his whole loss, if the plaintiff gives timely notice, or may be liable to the other tort-feasor for contribution of*

the commission's share of the amount the other tort-feasor has
been held responsible to pay to plaintiff, or by separate action
the commission may be held liable to the other tort-feasor for
the commission's share of the amount the other tort-feasor as
primary defendant has been held responsible to pay and has
paid plaintiff (CLS 1961, §§ 224.21, 600.2925; GCR 1963, 204).

20. JUDGMENT — THIRD-PARTY COMPLAINT — CONTRIBUTION — GOV-
ERNMENTAL IMMUNITY — 60-DAY NOTICE.

Accelerated judgment against a primary defendant's third-party
complaint for contribution should not be granted in favor of
third-party defendant board of county road commissioners
merely because plaintiff failed to give that board the statutory
60-day notice of damages suffered by reason of defective
county road (CLS 1961, § 224.21).

21. STATUTES—THIRD-PARTY PRACTICE—JOINT TORT-FEASOR—CON-
TRIBUTION—COURT RULES.

The statutes presently controlling third-party practice and con-
tribution provides that joint tort-feasors summoned as third-
party defendants pursuant to the court rules may be liable for
contribution (CLS 1961, §§ 224.21, 600.2925; GCR 1963, 204).

22. CONTRIBUTION—EQUITY—PAYMENT—CO-OBLIGORS.

Right of contribution is founded on principles of equity and
natural justice and is to be allowed after payment is made
where one or more of several parties have done more than
their just share in satisfying a common obligation to the ad-
vantage of co-obligors from whom contribution is sought.

23. SAME — THIRD-PARTY PRACTICE — NONPARTY TORT-FEASOR — IM-
PLEADER.

Defendant's failure to invoke third-party procedure in the
principal action does not defeat the statutory right of con-
tribution, for although impleader may be used to protect the
right of contribution, it is not essential to enforcement of con-
tribution against the nonparty tort-feasor (CLS 1961, § 600-
.2925).

24. SAME—JOINT TORT-FEASOR—INCHOATE RIGHTS—RIGHT TO RE-
COVER.

An inchoate right to compel contribution comes into being and
attaches as an interest of the joint tort-feasor the instant
common liability arises; however, this inchoate right does not
ripen into a right to recover contribution until the claimant
discharges more than an equitable share of the common lia-
bility.

25. SAME—JOINT TORT-FEASOR—THIRD-PARTY PRACTICE.

*Right of contribution from a joint tort-feasor may be determined by a defendant of an action for wrongful death arising out of a joint tort by having the joint tort-feasor made a party defendant, notwithstanding that the plaintiff's right of action against the other tort-feasor has been lost by a lapse of time (GCR 1963, 204.1).*

26. SAME—JOINT TORT-FEASOR—DURATION OF COMMON LIABILITY.

*Common liability of joint tort-feasors need only exist at the time plaintiff's cause of action accrues and need not exist at the time one of the tort-feasors seeks contribution as continued subsistence of the common liability is not indispensable to enforcement of statutory right to contribution (CLS 1961, § 600-.2925).*

27. SAME—THIRD-PARTY COMPLAINT—60-DAY NOTICE—PERSONAL INJURY.

*Injured party's noncompliance with the statute requiring 60-day notice to be served upon the board of county road commissioners after being injured on a defective county road is not a bar to a claim of contribution by a joint tort-feasor, for the third-party claim for contribution is not for recovery for personal injury (CLS 1961, § 224.21).*

28. SAME—STATUTES—EQUITY—DUTY TO SHARE LIABILITY.

*The bar against contribution among joint tort-feasors having been lifted by statute, the right of contribution in this State rests upon an equitably implied promise arising out of a legally recognized duty to share liability; thus, where plaintiff brings a tort action against a primary defendant with the latter seeking an adjudication by third-party procedure of the right to contribution against another tort-feasor, contribution should be allowed if primary defendant is held liable to plaintiff (CLS 1961, § 600.2925).*

29. SAME—STATUTE—JOINT TORT-FEASOR—60-DAY NOTICE—STATUTORY PURPOSE.

*Determination in a wrongful death action, where there were two joint tort-feasors, one of which was a board of county road commissioners that had been derelict in its statutory duty of maintaining county roads in reasonable repair, that the other tort-feasor could not protect his inchoate right of contribution unless he could persuade an authorized party to give the commission notice within 60 days of injury of intent to hold it*

liable for the injury, is in conflict with the purpose of the statute allowing contribution among joint tort-feasors (CLS 1961, §§ 224.21, 600.2925).

30. SAME—STATUTES—CREATION OF RIGHTS—DESTRUCTION OF DEFENSES—EQUITY.

Effect of the statute providing for contribution among joint tort-feasors is to create rights in the tort-feasor who has paid plaintiff and to destroy certain valid defenses which were previously available to the other tort-feasor in denying right to contribution, the theory being that as between tort-feasors, contribution is not recovery for tort but enforcement of the equitable duty to share liability for wrong done (CLS 1961, § 600.2925).

31. COSTS—CONTRIBUTION OF JOINT TORT-FEASOR—REVERSAL.

Costs should abide the final result of an action for contribution where the Supreme Court affirms the judgment of the Court of Appeals which reversed the judgment of the trial court that the board of county road commissioners as a joint tort-feasor was protected by the 60-day notice provision and thus entitled to an accelerated judgment in the third-party action by a joint tort-feasor for contribution (CLS 1961, §§ 224.21, 600-.2925).

32. CONTRIBUTION — JOINT TORT-FEASORS — STATUTES — JUDGMENT — BURDEN OF LOSS.

At common law a person injured by the joint and several torts of 2 or more persons was allowed to place the burden of loss on the tort-feasor he saw fit, but this State has enacted a statute which allows a joint tort-feasor against whom a joint judgment has been taken and who has paid more than his share the right of contribution against the other joint tort-feasor (CLS 1961, § 600.2925).

33. SAME—JOINT TORT-FEASORS—THIRD-PARTY PROCEDURE—SUBSTANTIVE RIGHTS.

Joint tort-feasors may be liable for contribution through the third-party procedure but the rule providing this procedure grants no substantive right to contribution (CLS 1961, § 600-.2925; GCR 1963, 204).

34. SAME—INDEMNITY—EQUITY—LIABILITY.

Indemnity, which secures entire reimbursement, and contribution, which requires equal sharing, are both remedies based on equitable principles to secure restitution for one that has paid more than his just share of a liability (CLS 1961, § 600.2925).

35. Same—60-Day Notice—County Highways—Negligence—County's Liability—Limitation.

*The statute requiring 60-day notice to a county of injury suffered on defective county roads does not limit the liability of county for negligence in maintaining county roads nor the right of the injured party to sue upon that liability between the breach of the statutory duty and expiration of the 60-day period, but sets forth a 60-day time limitation against the liability which accrues when the duty imposed by statute is breached (CLS 1961, § 224.21).*

36. Same — 60-Day Notice — Contribution — County Highways — Joint Tort-Feasors — Governmental Immunity.

*Two statutes, one which requires 60-day notice to a county for injuries suffered on defective county roads and was conceived and written before liability for contribution among joint tort-feasors was adopted in this State, the other statute providing the right of contribution among joint tort-feasors, are bound to affect every right and cause arising under statute against a municipal corporation, a political subdivision, or the State as well, as joint tort-feasors with such corporation, subdivision, or sovereign (CLS 1961, § 224.21).*

37. Counties—Negligence—Joint Tort-Feasors—Contribution—60-Day Notice—Governmental Immunity—Precedent.

*Determination that third-party plaintiff may not recover from the county for injuries suffered on defective county roads because either governmental immunity has not been waived as to an action for contribution, or if reliance is placed on the statute making the county liable for injuries to a person occurring as a result of defective county roads, the third-party plaintiff cannot insist on its benefits because the statutory 60-day notice was not given, lends no assistance to the trial courts and the bar in deciding when a governmental unit is to be held liable for contribution as a joint tort-feasor (CLS 1961, §§ 224.21, 600.2925).*

Appeal from Court of Appeals, Division 2, T. G. Kavanagh, P. J., and J. H. Gillis and McGregor, JJ., reversing Oakland, Adams (Clark, J.), J. Submitted February 4, 1964. (Calendar No. 2, Docket No. 51,958.) Decided September 3, 1969.

8 Mich App 260, reversed.

Complaint by Merle Morgan, administrator of the estate of Sharon Rose Morgan, deceased, against Andrew J. McDermott, Jr., and James Alan Coak, for damages as the result of decedent's death in an automobile accident caused by alleged negligence of defendant Coak. Defendants filed third-party complaint against the Board of County Road Commissioners of the County of Oakland, seeking contribution from the third-party defendant. Summary judgment for third-party defendant. Third-party plaintiff appealed to Court of Appeals. Reversed. Third-party defendant appeals. Reversed, and trial court affirmed.

*Hartman, Beier, Howlett & McConnell,* for third-party plaintiff.

*Patterson & Patterson, Barrett, Whitfield, Manikoff* and *White* (*Robert G. Waddell,* of counsel), for third-party defendant.

ADAMS, J.

### 1. THE FACTS AND PROCEEDINGS.

Plaintiff filed a complaint as administrator of the estate of Sharon Rose Morgan, deceased, who was killed on January 29, 1964, at the age of 12, while a passenger in an automobile owned and driven by Eva L. Balmer. The Balmer car collided with an automobile owned by defendant Andrew J. McDermott, Jr., and driven by defendant James Alan Coak.

On April 20, 1965, defendants moved to join the board of county road commissioners of Oakland county as a third-party defendant. The third-party complaint alleged that the county road on which the accident happened was unsafe; that third-party de-

fendant had knowledge of that fact but failed to take corrective action; and that its failure to do so contributed to cause the accident. Defendants, as third-party plaintiffs, sought judgment against third-party defendant for contribution of one half of any judgment against them. Defendants based their demand on the statute and court rule which permit one tort-feasor to add another tort-feasor as a third-party defendant in order to obtain contribution. CLS 1961, § 600.2925(1) (Stat Ann 1962 Rev § 27A.2925[1]); GCR 1963, 204.1.

On May 24, 1965, third-party defendant filed a motion for accelerated judgment alleging that the first notice to it of any claim of defective highways and of the accident was the statements contained in the third-party complaint and that, as a consequence, the claim was barred because of failure to give notice pursuant to the requirements of CLS 1961, § 224.21 (Stat Ann 1958 Rev § 9.121). The trial court granted the motion and dismissed the third-party complaint.

The Court of Appeals reversed and disposed of the case by holding that section 224.21 containing the 60-day notice requirement does not apply to an action for contribution between joint tort-feasors arising out of a wrongful death claim. (1967), 8 Mich App 260, 263, 265.

## 2. Right of Contribution as Between Joint Tort-Feasors.

Prior to the effective date of the revised judicature act (January 1, 1963), the only remedy available to one joint tort-feasor against another was by chancery action for contribution (CL 1948, § 691.564 [Stat Ann 1959 Cum Supp § 27.1683(4)]) taken in pursuance of PA 1941, No 303, being CL 1948, § 691-.561 et seq. (Stat Ann 1959 Cum Supp § 27.1683[1]

*et seq.*).  See *Husted* v. *Consumers Power Company* (1965), 376 Mich 41, 47.  CL 1948, § 691.561, *supra,* since repealed by RJA, read as follows:

"Whenever a money judgment has been recovered jointly against 2 or more defendants in an action for bodily injury or death resulting therefrom, or property damage, and such judgment has been paid in part or in full by 1 or more of such defendants, each defendant who has paid more than his own pro rata share shall be entitled to contribution with respect to the excess so paid over and above the pro rata share of the defendant or defendants making such payment: Provided, however, That no defendant shall be compelled to pay to any other such defendant an amount greater than his pro rata share of the entire judgment."

In *Husted,* this further statement appears (p 47):

"The act of 1941 was changed in minor degree (to accommodate the new procedure only and not to change the substance) and reenacted as section 2925 of the revised judicature act of 1961 (CLS 1961, § 600.2925 [Stat Ann 1962 Rev § 27A.2925])."

Section 2925 of RJA is as follows:

"(1) Whenever a money judgment has been recovered jointly against 2 or more defendants in an action for bodily injury or death resulting therefrom, or property damage, and such judgment has been paid in part or in full by 1 or more of such defendants, each defendant who has paid more than his own pro rata share is entitled to contribution with respect to the excess so paid over and above the pro rata share of the defendant or defendants making such payment.  Joint tort-feasors who are summoned in as third-party defendants pursuant to court rule may likewise be liable for contribution. No person may be compelled to pay to any other

defendant an amount greater than his pro rata share of the entire judgment."

GCR 1963, 204.1(1) provides:

"Subject to the provisions of section 3030 of the insurance code of 1956, before the service of his answer a defendant may move ex parte or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may thereafter be liable to such third-party plaintiff, by right of contribution or otherwise, for all or part of the plaintiff's claim against him."

The committee comment which follows Rule 204 states:

"The language of this rule differs from the Federal counterpart in another respect. The purpose of the change is to overcome the decision in *Buckner* v. *Foster* [ED Mich, 1952], 105 F Supp 279, in which the Michigan contribution among joint tort-feasors act was construed in light of the Federal Rule 14. It was there held that the right of contribution given a joint tort-feasor arises under the Michigan statute only after a several judgment against the defendant in excess of his pro rata share of liability, and thus impleader of the joint tort-feasor was denied. Such a result is not sound. Rule 204 will allow Michigan courts to avoid the decision of the *Buckner Case,* since impleader is authorized whenever a person not a party 'may thereafter be liable to such third-party plaintiff by right of contribution or otherwise.' This should include also the substantive right of contribution given a joint tort-feasor in libel cases by CL 1948, § 691.571 (Stat Ann § 27.1401)."[1]

---

[1] See, currently, CLS 1961, § 600.2911 (Stat Ann 1962 Rev § 27A-.2911).—REPORTER.

In *Husted, supra,* Rule 204 was declared not to create substantive rights. (p 47.) The substantive basis for defendant's claim against the third-party defendant must be found elsewhere before the rule becomes operative. (p 47.) The substantive rights and liabilities of parties to an action are determinable according to the law as it stood when the causes alleged by the plaintiff accrued. (p 47.)

The third-party practice introduced to Michigan by the revised judicature act of 1961 and Rule 204 has no bearing on the decisional outcome of this case. The present statute (CLS 1961, § 600.2925 [Stat Ann 1962 Rev § 27A.2925]) governing contribution between joint tort-feasors still requires that a money judgment first be recovered before the right to contribution comes into existence. It makes no attempt to define a joint tort-feasor or what constitutes tortious conduct or who may or may not be liable for the commission of a tortious act. All that Rule 204 does is to permit adjudication of liability—such liability as may be found to exist elsewhere in the law—in one trial if the trial judge so orders. Consequently, in this case, if the third-party plaintiffs are to obtain contribution from the third-party defendant, they must look beyond the provisions of the RJA and the GCR as to contribution and establish a substantive basis for their cause of action by other means.

### 3. LIABILITY OF COUNTIES FOR DEFECTIVE ROADS.

In 1893, the legislature, by Joint Resolution No 11, proposed an amendment to the State Constitution (1850) to be known as section 49 of article 4. PA 1893, p 433. The amendment authorized the legislature to enact laws for the laying out, construction, and maintenance of county and township roads on the condition that any act passed by the legislature for this purpose shall provide for a county and

township system and *the county system shall become operative only in such counties as shall adopt it by a majority vote of the electors.* The proposed amendment was ratified by the people at the April election of 1893. PA 1893, p 451.

Subsequently, the legislature proposed a system of county and township roads by the passage of PA 1893, No 149, effective May 26, 1893. Section 21 of the act (CL 1897, § 4282) in part provided:

*"The provisions of law respecting the liability of townships, cities, villages and corporations for damages for injuries* resulting from a failure in the performance of the same duty respecting roads under their control, *shall apply to counties adopting such county road system."* (Emphasis added.)

It was in this fashion that the statutory liability of a county that elected to adopt a county road system was created.

To determine that liability, it is necessary to examine the liability of townships, cities, villages, and corporations for damages for injuries resulting from a failure of performance of the duties respecting roads under their control. In 1893, this was prescribed by PA 1887, No 264, set forth as chapter 91, CL 1897, being sections 3441 through 3445. *Liability* of townships, villages, or cities for damages for bodily injury or injury to property sustained upon any of the public highways, streets, bridges, et cetera, *could only be established in accordance with the provisions of the act. By section 5 of the 1887 act, common-law liability was abrogated (CL 1897, § 3445).* Chapter 91 of CL 1897 became chapter 22 of the general highway law. See CL 1948, § 242.5 (Stat Ann 1958 Rev § 9.595).

In addition to the above statutory provisions as to liability, in *Roberts* v. *City of Detroit* (1894), 102 Mich 64, the Court said (p 66):

"Municipal corporations, in Michigan, are liable for injuries resulting from their neglect to repair public highways *only where made so by statute.* That there is no common-law liability was decided in the case of *City of Detroit* v. *Blackeby* (1870), 21 Mich 84, which was a crosswalk case. It was followed by *McCutcheon* v. *Village of Homer* (1880), 43 Mich 483. The earlier case contains an exhaustive discussion of the subject, holding that the duty of cities to repair highways is a public one, and that a private action does not lie for negligence in such cases. Subsequently *a statutory liability was created, and it is under this statute that the plaintiff must recover, if at all.*" (Emphasis added.)

In *Rufner* v. *City of Traverse City* (1941), 296 Mich 204, it was said (p 209):

"The reason that a city was not liable at common law for injuries caused by defective highways was because the duty to repair was a public one, and thus, since the city in the management and control of its highways was acting in a governmental capacity, it was immune from liability. *City of Detroit* v. *Blackeby* (1870), 21 Mich 84 (4 Am Rep 450); *Roberts* v. *City of Detroit* (1894), 102 Mich 64 (27 LRA 572). In effect the above statute [CL 1929, § 4225, CL 1948, § 242.3] removes the exemption from liability and declares that the city must keep its highways reasonably safe for travel."

In *Cabana* v. *City of Hart* (1950), 327 Mich 287, this language appeared at page 300:

"We are here concerned primarily with the interpretation of the provisions of the general highway law, above quoted, which, as pointed out in the *Rufner Case,* modified to the extent there indicated the doctrine of governmental immunity on the part of municipal corporations of the State."

Liability of a county for damages was continued in the general highway law in section 21 of chapter 4 (CL 1948, § 224.21 [Stat Ann § 9.121]) by the words:

"The provisions of law respecting the liability of townships, cities, villages and corporations for damages for injuries resulting from a failure in the performance of the same duty respecting roads under their control, shall apply to counties adopting such county road system."

These are the identical words which appeared in the initial act and which have been previously quoted in this opinion. See PA 1893, No 149, § 21. They have been preserved in the last amendment to section 224.21. See PA 1954, No 12 (CLS 1961, § 224.21 [Stat Ann 1969 Cum Supp § 9.121]). This language has appeared in section 21 throughout its legislative history.

Proceeding according to the language quoted from section 224.21 above, to ascertain what is the basis of liability for damages by townships, cities, villages, and corporations, resort must be had to chapter 22 of the general highway law, designated "Recovery of Damages," appearing at CL 1948, § 242.1 *et seq.* In 1915, by PA 1915, No 301, three new sections were added to this chapter to stand as sections 6, 7, and 8. They appear without change as CL 1948, §§ 242.6, 242.7, and 242.8 (Stat Ann 1958 Rev §§ 9.596, 9.597, 9.598). These three sections relate to notice of defective conditions and claim for injury or damage. The county is not named in any of the three sections—sections 6 and 7 referring to "township, village or city" and section 8 referring to "city or incorporated village."[2]

---

[2] All of chapter 22, which included sections 6, 7, and 8, was repealed by PA 1964, No 170, effective July 1, 1965 (MCLA §§ 691-.1401–691.1415, Stat Ann 1969 Cum Supp §§ 3.996[101]–3.996[115]).

Section 8 contained the following language:

"The intent and purpose of the provisions of this chapter are to make the law of liability on the part of townships, villages and cities for injuries sustained by persons because of the defective condition of the highways and the procedure in giving notice thereof, uniform throughout the state, and to repeal all laws or acts of the legislature be the same general, local or special which are inconsistent with or contravening the provisions herein."

The requirements in section 8 for written notice were:

"In the event damages are sustained by any person, either by bodily injuries or to his property, because of the defective condition of any highway, street, bridge, sidewalk, crosswalk or culvert in any city or incorporated village of this state where written notice of such injury and defect is now required by law to be served upon such village or city before recovery can be had, it will be necessary to show that such person did serve written notice upon said city or village within 60 days from the time of the happening of such injury."

Manner of service and contents of the notice were spelled out.

In the same year (1915), the legislature also amended section 21 of chapter 4 (CL 1948, § 224.21) of the general highway law, dealing with county roads, but the amendment related to completion of

---

Since the accident in this case occurred on January 29, 1964 and the complaint was filed on March 17, 1965, with leave granted on April 20, 1965 to join the third-party defendant, the repeal is inapplicable to this case. Even if third-party plaintiffs were factually in a position to bring their cross-action under the 1965 act, they would not benefit thereby because of the following language quoted from PA 1964, No 170, § 2:

"The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21, chapter 4 of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Compiled Laws of 1948."

roads under construction and no 60-day notice requirement of injuries or damages was imposed on behalf of the county as had been done on behalf of cities and incorporated villages by foregoing section 8. See PA 1915, No 75.

In 1919, section 8 was held by this Court not to apply to townships. *McIntyre* v. *Township of Grant* (1919), 206 Mich 223, 227. In that year the legislature clarified the notice requirement to counties by passage of PA 1919, No 388, requiring service of a written notice within 60 days after injury where the county road system was involved. See CL 1948, § 224.21.[3]

#### 4. The Scope of the 60-Day Notice Requirement.

In construing liability of boards of county road commissioners under section 224.21, consideration must be given to the 1951 amendment to section 1 of chapter 22 by PA 1951, No 19, which added the words "and to *any person suffering damages* by reason of such injury." (Emphasis added.)[4] What is

---

[3] This section was amended by PA 1951, No 234, to require actions thereunder to be brought against the board of county road commissioners. It was last amended in 1954 by PA 1954, No 12, relating to the service of notice. At the time of this action the controlling provisions were as follows:

"It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel. The provisions of law respecting the liability of townships, cities, villages and corporations for damages for injuries resulting from a failure in the performance of the same duty respecting roads under their control, shall apply to counties adopting such county road system. Actions arising thereunder shall be brought against the board of county road commissioners of the county and service shall be made upon the clerk and upon the chairman of the board made defendant therein, which shall be named in the process as the 'board of county road commissioners of the county of ........' "

[4] As amended, the pertinent features of section 1 were:

"Any person * * * sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep

the scope of this amendment?   Judge Noel Fox held
that it did not apply in an action for wrongful death
in *Kraus* v. *Board of County Road Commissioners*
(WD Mich, 1964), 236 F Supp 677.   The Michigan
Court of Appeals followed his reasoning.   8 Mich
App 260, 264.   The use of the words "any person"
appears inappropriate to such a conclusion.   In
*Kraus,* in an unreported opinion, Judge Fox later
reconsidered his first holding and dismissed the ac-
tion for lack of the statutorily required notice.   He
was upheld by the United States court of appeals,
*Kraus* v. *Board of County Road Commissioners*
(CA 6, 1967), 385 F2d 864.

In *Kraus,* the action was brought by a special
administratrix, the widow of a man who had been
injured on a highway and who died from such in-
juries.   She sued the boards of county road com-
missioners of two counties alleging negligence in
failing to keep the roads in a condition reasonably
safe and convenient for public travel.   The widow's
suit was brought pursuant to the provisions of the
wrongful death statute.   If her husband had sur-
vived the accident and had brought an action against
the counties for damages because of his injuries, he
would have been required to give the 60-day notice.
Since the widow did not give notice until suit was
filed almost two years after the accident and since
she was held not to be relieved of the requirements
of the statute, she was out of court.[5]

<hr>

such public highways or streets, * * * in reasonable repair, and
in condition reasonably safe and fit for travel by the township, vil-
lage, city or corporation whose corporate authority extends over such
public highway * * * and whose duty it is to keep the same
in reasonable repair, such township, village, city or corporation shall
be liable to and shall pay to the person * * * so injured or dis-
abled, and to any person suffering damages by reason of such injury,
just damages, to be recovered in an action of trespass on the case
before any court of competent jurisdiction."

[5] In an application for rehearing filed in the Michigan Court of
Appeals, it was pointed out that United States District Court Judge
Fox subsequently reversed his position reported in 236 F Supp 677

In this case, defendants stand as third-party plaintiffs in asserting their rights against the third-party defendant. They make no claim against Oakland county because of bodily injuries suffered by them. Their action is for contribution from an alleged joint tort-feasor. There has been no trial on the merits—no adjudication that defendant and third-party defendant are joint tort-feasors. The liability of the third-party defendant has yet to be established.

We have seen that the procedural rule permitting impleader creates no substantive rights of contribution. Due to its governmental immunity, the liability of a county is purely statutory. Common-law liability, if any, was abrogated both by statute and by decision of this Court. The only statute that sets forth any liability of a county relating to the construction or maintenance of county roads is CLS 1961, § 224.21 (Stat Ann 1958 Rev § 9.121). In this case, we need not determine whether section 224.21 will permit an action for contribution or is limited to actions to recover for personal injuries and property damage.

The notice requirement as it appeared in chapter 22 of the general highway law subsequent to enactment of the 1915 act adding sections 6, 7, and 8 (CL 1948, §§ 242.1–242.8 [Stat Ann 1958 Rev §§ 9.591–9.598]) was held by this Court to be mandatory and applicable to claims against cities for injuries allegedly caused by defective conditions of a sidewalk or highway. *Sykes* v. *City of Battle Creek* (1939), 288 Mich 660, involved a suit for damages for personal injuries sustained when stepping off a curb. No

and later held the notice provisions of the statute (CL 1948, § 224.21) were applicable in an action brought under the wrongful death act, which conclusion was upheld by the United States court of appeals for the 6th circuit in an opinion issued November 30, 1967, with copy attached to the application for rehearing. Nonetheless, the application for rehearing was denied on January 23, 1968.

notice of claim of injury was served on the city. It was argued that the city charter requirement of notice within 60 days from date of injury conflicted with the general statute of limitations in force at the time the charter was adopted and consequently the requirement was void. The argument was rejected, the Court saying (p 663):

"The intent of the statute [citing section 8, *supra*] was to make uniform both the procedure for giving notice and the liability of cities throughout the State for highway defects. To that end all inconsistent 'general, local or special' acts were expressly repealed, and the notice requirement of 60 days from the happening of the injury expressly approved. The Battle Creek charter fully complied with the statute."

The action in *Boike* v. *City of Flint* (1965), 374 Mich 462, was for damages resulting from a fall on an icy sidewalk. It was argued that sections 1, 5, 7, and 8 of chapter 22, *supra* (CL 1948, § 242.1 *et seq.* [Stat Ann 1958 Rev § 9.591 *et seq.*]) created a right of action for "bodily injury" based upon negligence but not upon nuisance and consequently the 60-day written notice requirement applies solely to actions based upon negligence and does not apply to actions based upon nuisance. In a per curiam opinion, the Court said (pp 463, 464):

"We are not disposed to enter upon a discussion of the distinctions between a right of action based on negligence and a right of action based on nuisance. * * * It is ruled simply that the requirement of statutory notice applies to any and all actions for 'bodily injury' sustained by reason of neglect to keep streets of a city, or ways of a city under city control, in reasonable repair and in condition reasonably safe and fit for public travel, and that the statute makes for its purposes no distinction between

the various theories of recovery that are open to a person claiming damages for such 'bodily injury.'

"The provisions of section 8 are plain. They are lay understandable as well as professionally understood, and are mandatory. Since plaintiff lost his cause for 'bodily injury' under the statute, by reason of failure to comply on time with said section 8, he is now possessed of no right of action—against the defendant city—on account of the conditions which caused the injury and consequences he has pleaded."

A fall on a sidewalk was the basis for complaint in *Trbovich* v. *City of Detroit* (1966), 378 Mich. 79. Notice was not given the city within the time limitation of the statute and such failure was sought to be excused on the ground plaintiff became mentally and physically incapacitated as a result of her injury. Dismissal of the action by the trial court was affirmed, six Justices predicating their decision on the proposition that the right of action, being statutory, must fail if shown to be lacking in any of the statutory elements. Notice was an essential element.

In *Kowalczyk* v. *Bailey* (1967), 379 Mich 568, plaintiff was denied relief by summary judgment against her on a cause of action against the city for injuries due to failure to remove an illegally parked automobile as an obstruction in the street after the city had notice of its presence because of plaintiff's noncompliance with the statutory requirement of written notice to the city within 60 days.

In view of the foregoing so-called city cases, it follows that the statutory 60-day notice is applicable to any action that may be maintained against boards of county road commissioners under the statute:[6] Whether or not an action against the board of county road commissioners for contribution as a joint tort-

---

[6] As bearing on the basis of liability of the board of county road commissioners, see *Moore* v. *County of Ingham* (1961), 363 Mich 533.

feasor because of an automobile accident on a county road qualifies as one for bodily injury or property damages within the meaning of CLS 1961, § 224.21, is immaterial to a decision in this case.

Third-party plaintiffs are in this dilemma: either governmental immunity has not been waived as to an action for contribution such as they assert, or, if reliance is placed on the statute, third-party plaintiffs cannot insist on its benefits because the statutory 60-day notice was not given.[7]

The Court of Appeals is reversed. Trial court is affirmed. Costs to third-party defendant.

## ADDENDUM.

Justice BLACK has assumed a "common liability" between third-party plaintiffs and third-party defendant arose at the time the accident happened. In the ordinary case of joint tort-feasor, such an assumption would be entirely warranted. I do not believe it can be made here due to the fact that the board of county road commissioners' tortious act, standing alone, by virtue of the provisions of section 224.21, does not result in liability to anyone unless the 60-day notice requirement is met. In the usual joint tort-feasor case, we do not have to reckon with the doctrine of governmental immunity. We do here.

As pointed out in the body of this opinion, in Michigan, prior to the statute, the construction and

---

[7] In *Grand Trunk Western Railroad Co.* v. *City of Detroit* (1955), 342 Mich 537, plaintiff's employee was injured by a sign the city had attached to a pole. The railroad, after settling its employee's claim, sought indemnification or contribution from the city. It was held that the action could not be maintained because plaintiff had failed to comply with statutory and charter prerequisites necessary to make defendant subject to suit. Justice BUTZEL stated (p 541): "Under either of plaintiff's theories the requirements of the charter are mandatory and were not complied with." While the case does not further discuss the reason for such a holding where the action is one for contribution, the holding is squarely in point here.

maintenance of public roads was for the benefit of the traveling public and no rights as to the condition of the highway existed in the individual user. Consequently, there was no duty of road maintenance owing to an individual which would support an action at the common law in the event of a breach.

A county had governmental immunity and could not be liable for its torts, absent statutory authority. It follows that it cannot be liable as a joint tortfeasor *except* in so far as the shield of immunity has been statutorily removed and a liability created. The condition of liability is compliance with the 60-day notice requirement. Until it has been fulfilled, there is no liability. The county's immunity cannot be lost simply on the basis of its having been a *joint* tort-feasor rather than its having been the *sole* tort-feasor. The public policy behind the 60-day notice requirement is even more compelling in the case of a claim of joint tort-feasance than when the county only is the alleged tort-feasor.

To follow the reasoning of Justice BLACK, a county is immune from liability in the case of its being the *sole* tort-feasor unless the 60-day notice is given, and yet the county may become liable in contribution years afterward where the claim is of a joint tort without such notice, without being impleaded, and without the opportunity speedily to investigate the claimed tortious conduct.

In *Hack Investment Co.* v. *Concrete Wall Company* (1959), 356 Mich 416, plaintiff sued to obtain contribution from defendant. A judgment had been rendered against both of them and was paid by the plaintiff. This Court held that plaintiff's suit for contribution was properly dismissed because of a statutory requirement that the action must be brought in chancery within 6 months after discharge of the judgment. The suit was not begun

within the required statutory period. Justice CARR, writing for a unanimous Court, said (pp 421, 424):

"Prior to the enactment of the statute above cited the rule was well settled that there was no right of contribution or indemnity as between joint tort-feasors guilty of actionable negligence, or *in pari delicto*. In exceptional cases, in which technical wrongdoing was distinguished from actual negligent conduct, recovery was permitted by a defendant, forced to make payment of the judgment, from a party responsible for the injury and damage resulting in judgment. * * *

"The legislative action was basically in derogation of the common law only as it abrogated the rule that as between tort-feasors generally there was no right of contribution. The statute clearly covers the class of cases formerly recognized as possible exceptions to the general rule, and the intent is manifest from its language that a uniform method of procedure shall be observed.

"Unquestionably one asserting a statutory right of action in derogation of the common law must establish that he is within the terms of such statute. This Court in *Yount* v. *National Bank of Jackson* (1950), 327 Mich 342, 347 (17 ALR2d 685), quoted with approval from *Hamilton* v. *Jones* (1890), 125 Ind 176, 178 (25 NE 192), as follows:

" ' "Statutes in derogation of the common law are to be strictly construed, and one who seeks to maintain an action which was within the prohibition of the common law must be able to point to a statute which in plain and explicit terms authorizes the action to be maintained. A plaintiff who sues on a right of action given by statute must present a case clearly within the statute which creates the right." ' "

To reiterate, the common-law liability of a county in this case, if it ever existed, has been abrogated both by statute and by decisions of this Court. Only

a statutory liability remains. The terms of the statute must be met.

In the case of *White* v. *Johnson* (1965), 272 Minn 363 (137 NW2d 674), cited by the Court of Appeals, a truck collided head on with an automobile which veered from its lane of travel and collided with another automobile. The occupants of the automobile sued the truck driver and he filed complaints against the city of St. Paul on the basis that the city had negligently maintained the highway. The supreme court of Minnesota held that the truck driver could preserve a derivative claim against the city for either contribution or indemnity by his own adequate notice of claim against the city, despite absence of claim against the city by the occupants of the automobiles. In disposing of the city motion for summary judgment, the Court said (pp 366, 367):

"Although there are decisions in other States holding that actions for contribution or indemnity may be maintained against a municipality despite noncompliance with statutory provisions requiring prior notice or presentation of claims against a municipality,[2] we have held that the failure to give

---

"[2] *Valstrey Service Corporation* v. *Board of Elections* (1957), 2 NY 2d 413 (161 NYS2d 52, 141 NE2d 565); *Minneapolis, St. Paul and Sault Sainte Marie R. Company* v. *City of Fond du Lac* (CA7, 1961), 297 F2d 583 (93 ALR2d 1378)." (Minnesota footnote.)

---

timely notice as required by our notice of claim statute, Minn St 1961, § 465.09, precluded an action for indemnity against a municipality. *American Automobile Insurance Company* v. *City of Minneapolis* (1961), 259 Minn 294 (107 NW2d 320). In that case the insurance company made a settlement of an action against its insured property owner for damages sustained by a person injured in a fall at a point where a private ramp met a defective city sidewalk. The injured party did not give notice of a claim against the city and neither did the prop-

erty owner or its insurance company until after the
settlement was made, some 3 years after the injury
occurred. We held that the action involved a claim
for injury based on negligence, not contract, and
that the failure to give notice within 30 days of in-
jury as required by section 465.09 'prevented any
liability on the part of the city from existing.' 259
Minn 298 (107 NW2d 323). This result was neces-
sarily based upon our conclusion that the wording
of the statute applicable to this case is broad and
inclusive and that notice is a prerequisite to main-
taining an action for indemnity or contribution
against a municipality even though such a claim is
contingent at the time notice is required to be
served. The opinion left open the question, how-
ever, whether the action could have been maintained
had timely notice been given."[8]

---

[8] As to Justice BLACK's comments under point 2 of his summary,
since there was no notice given in this case, we do not have a ques-
tion of right of notice by a third-party plaintiff before us. That
he has come to a correct assumption, however, is not necessarily so.
In *White, supra,* the Minnesota court reasoned to a contrary result.
The Court said (pp 370, 371):

"Our statute requiring notice does two things. It compels notice
to a municipality, but it also destroys the municipality's common-law
immunity from liability for negligence in the maintenance of its
streets and public grounds. Thus the statute concurrently creates a
duty upon the municipality to use due care and a right against the
municipality on the part of any person damaged because of a breach
of that duty. We have here, then, a right and a duty pre-existing
the injury. * * *

"The more precise characterization of the notice requirement is
that it is a condition precedent to bringing suit for the practical
purpose of quickly informing a municipality of injuries for which
it might be liable. Conceptually, *the giving of notice is an essential
element of the cause of action,* but realistically, because of the pre-
existing right and duty, liability is created at the instant the tort is
committed. The city is then subject to a liability, and it is no more
unexpected that a city might settle a claim before the giving of notice
than that private parties might settle before commencement of suit.
We have held that a covenant not to sue secured by one wrongdoer
does not destroy the common liability necessary for contribution.
And the majority of the courts hold that running of the statute of
limitations against one defendant on the plaintiff's claim does not
bar a suit for contribution against him. The reasoning underlying
these decisions is that joint liability arises the moment the tort is
committed and these defenses come into being after the conduct
which creates that liability. Moreover, since the right to recover
contribution is based on equitable principles and has the objective

The 60-day notice requirement is a condition "to any liability * * * for damages sustained by any person * * * either to his person or property, by reason of any defective county road, bridge or culvert." (CLS 1961, § 224.21 [Stat Ann 1958 Rev § 9.121].)

T. E. BRENNAN, C. J., and KELLY and T. M. KAVANAGH, JJ., concurred with ADAMS, J.

BLACK, J. (*dissenting*). All requisite facts appear in Justice ADAMS' opinion for reversal and will not be repeated here. This being a simple issue of right of the primary defendants to have their duly served and legally sufficient third-party complaint for contribution proceed to judgment or judgments as in Rule 204 (GCR 1963) provided, rather than a far-afield inquiry into the statutory liability to "any person" (under CLS 1961, § 224.21 [Stat Ann 1958 Rev § 9.121])[1] of a county road commission, I stand for affirmance and therefore dissent.

That there be no misunderstanding of the ensuing opinion, note is made that this appeal has arrived

of compelling joint wrongdoers to share responsibility for damages inflicted by their tortious acts, the conduct of the person from whom contribution is sought ought to control the right to maintain the action. *The objective of contribution has equal validity where one of the tort-feasors is a municipal corporation.* To permit a personal defense against the injured plaintiff to destroy the right to contribution from a municipality under the circumstances disclosed in this case would not only frustrate the basic aim of permitting recovery between participating tort-feasors but would deny third-party rights against a municipality where the statute creating it neither expressly nor by fair implication so intends.

"We are of the opinion that these reasons are applicable to a statute making notice a condition precedent to bringing suit. Accordingly, we hold that the right to recover contribution is not defeated by the failure of the plaintiffs to give notice to the city." (Emphasis added.)

The Minnesota court held that a notice by the third-party plaintiff, even though only as to his own claim against the city, was sufficient to permit impleading the city as a third-party defendant for purposes of contribution.

[1] The noun "person" is stressed purposely as reference to section 224.21 proceeds. The ensuing text will explain fully.

upon taken-as-true pleadings only, that the status of the primary defendants and the third-party defendant—as alleged joint tort-feasors—has not as yet been tried to finding or verdict and judgment, and that the time for determining whether the primary defendants are possessed of an accrued (distinguished from inchoate) right of contribution against the third-party defendant has not as yet arrived. That right will arise, if at all, when the primary defendants and the third-party defendant have been adjudged joint tort-feasors and the primary defendants have satisfied any judgment which upon the trial has been entered in favor of the plaintiff.

The liability of a county road commission, guilty (when and if proved) of being one of two joint tort-feasors, its negligence consisting of failure to perform the duty charged upon it by section 224.21, may be outlined properly as follows:

(a) The commission may under section 224.21 be held liable to the plaintiff for the whole of the latter's loss, provided such plaintiff gives timely notice under said section 224.21, or

(b) The commission may, under CLS 1961, § 600.2925 and correlative Rule 204 (GCR 1963), be held liable to the other tort-feasor for contribution of its share of the amount such other tort-feasor as primary defendant has been held responsible to pay, and has paid, to the plaintiff person, or

(c) The primary defendant may, by separate action now that section 600.2925 has removed fully the former bar against contribution (initiated in Michigan by *Norris* v. *Hill* [1849], 1 Mich 202, 212), hold the commission liable to him for the commission's share of the amount such primary defendant has been held responsible to pay, and has paid, to the plaintiff. In such instance the primary defendant, omitting (should he choose) motion for leave under

Rule 204.1, may await the outcome of the plaintiff's suit against him and then, should he be held responsible for the plaintiff's damages and should he satisfy the same, he as possessor of a matured right to contribution may sue the commission for recovery thereof. As to this paragraph (c) see *Sattelberger* v. *Telep* (1954), 14 NJ 353 (102 A2d 577) and quotation thereof, *post;* also the first sentence of the Court-approved "committee comment" which was appended below section 2925 of the revised judicature act (MCLA § 600.2925, p 738, Stat Ann 1962 Rev § 27A.2925, p 171). That sentence appears in the margin.[2]

The foregoing strips our inquiry to desirable simplicity. It is whether failure or omission of the notice required by CLS 1961, § 224.21 provides a lawful reason for entitlement of this third-party defendant to an accelerated judgment as against the third-party complaint these primary defendants have served and filed under Rule 204. Division 2 ruled it did not (*Morgan* v. *McDermott,* 8 Mich App 260). I agree.

Two statutes should be scrutinized together. One is CLS 1961, § 224.21. The other is new and presently controlling CLS 1961, § 600.2925, the third-party defendant having been duly served and brought in upon grant of motion made by the primary defendants under GCR 1963, 204.1. Section 600.2925 provides without reservation that "Joint tort-feasors who are summoned in as third-party defendants pursuant to court rule may likewise be liable for contribution."

Now when these joint torts as alleged were committed in January of 1964, both the primary defend-

---

[2] "The next to last sentence in (1) is inserted to accomplish the result intended in Rule 204.1, that the right of contribution should not depend on whether or not the plaintiff saw fit to sue both joint tort-feasors."

ants and the third-party defendant were suable and
liable alike, under the wrongful death statute, to the
plaintiff for the death of the plaintiff administrator's
12-year-old daughter. Yet the plaintiff administra-
tor chose to sue the primary defendants only. Does
either the neglectful failure or the purposeful omis-
sion of notice, under section 224.21, bar the right of
those chosen by the plaintiff as defendants to protect
their currently inchoate right to contribution?[3] It
seems to me that, by considering the exact nature of
the right of contribution, and especially the purpose
of these widely enacted new provisions for contribu-
tion among tort-feasors (see annotation 34 ALR2d
1107, § 1), the answer becomes evident.

"It has often been stated by the courts that con-
tribution is founded on principles of equity and
natural justice. The doctrine rests on the principle
that when parties stand *in aequali jure,* the law re-
quires equality, which is equity, and one of the par-
ties will not be obliged to bear more than his just
share of a common burden or obligation to the ad-
vantage of his co-obligors. 13 CJ p 821. It is ap-
plied in those cases where one or more of several
parties equally obligated have done more than their
share in performing a common obligation." *Lori-*

---

[3] To ascertain precisely that these primary defendants could not
have given the statutory notice, let us read the specific requirement
of section 224.21:

"Provided, however, That no board of county road commissioners,
subject to any liability under this section, shall be liable for dam-
ages sustained by any *person* upon any county road, either to his
person or property, by reason of any defective county road, bridge
or culvert under the jurisdiction of the board of county road com-
missioners, unless *such person* shall serve or cause to be served
within 60 days after such injury shall have occurred, a notice in
writing upon the clerk and upon the chairman of the board of county
road commissioners of such board, which notice shall set forth sub-
stantially the time when and place where such injury took place, the
manner in which it occurred, and the extent of such injuries as far
as the same has become known, the names of the witnesses to said
accident, if any, *and that the person receiving such injury intends
to hold such county liable for such damages as may have been sus-
tained by him."* (Emphasis supplied by present writer.)

*mer* v. *Julius Knack Coal Co.* (1929), 246 Mich 214, 217 (64 ALR 210).

For an identical statement of the rule, see *Sattelberger* v. *Telep, supra.* There the equitable principle applied to a *direct suit* by one joint tort-feasor against the other, *after* the former had satisfied the original plaintiff's judgment. The court held:

"Under our law, the failure of the defendant in the principal action to invoke the third-party procedure does not defeat the statutory right of contribution. Impleader may be had for the protection of the right of contribution, but it is not under the statute a *sine qua non* to the enforcement of contribution against the nonparty tort-feasor."

An excellent summation of the right of contribution, starting with the inchoate event of common liability and proceeding on to the ripening of that event into the status of an actionable cause, appears in the recent text of section 46, 18 Am Jur 2d, Contribution, pp 65, 66. The section is headed *"Generally; inchoate right to contribution."* The complete second paragraph thereof reads:

"It is important to note, however, the distinction between the accrual of the right to *recover* contribution and the inchoate right to contribution before payment or discharge of the common liability. Even though a cause of action for contribution does not become complete until the claimant's act of payment or discharge of more than his equitable share of the common liability, generally a right to be protected against an unfair exaction—an incidental or inchoate right to compel contribution—comes into being and becomes the property right or interest of a tort-feasor the instant the joint or concurring acts of himself and other tort-feasors give to the injured person a cause of action against them—in other words, when the common liability arises. Such right

is in a sense an incident which follows the principal
event out of which the injured person's cause of
action arises, and once in being, although contingent,
subordinate, or inchoate, it is nonetheless real and
subsisting, and has an existence in contemplation of
law until it is no longer needed as a resource to
which the joint tort-feasor may look for relief from
an imposition upon him of an inequitable share of
the burden on account of the joint tort, provided he
does not in the meantime waive or give up such right.
This inchoate right arises as soon as the acts of the
joint wrongdoers raise the injured person's cause of
action against them; it does not depend upon an ac-
tion against them being commenced. It is held that
even death of a joint tort-feasor after the negligent
act has fixed the right of contribution upon the com-
mon liability does not destroy such right nor inter-
fere with its legal growth into an accrued cause of
action." (Emphasis of "recover" is that of the text-
writer.)

Today's question, carried from the foregoing gen-
eral principles to the specific, has been settled by
reasoned cases which seem to be opposed by no rec-
ognized authority. See *Tarkington* v. *Rock Hill
Printing & Finishing Co.* (1949), 230 NC 354 (53
SE2d 269, 11 ALR2d 221) and cases gathered under
section 8 of the appended ALR annotation. The
lead paragraph of section 8 lays down the appli-
cable rule with precision (p 242):

"A defendant in an action for personal injury or
death arising out of a joint tort may exercise his
statutory right to have another joint tort-feasor
brought in and made a party defendant for the pur-
pose of asserting a right to contribution, notwith-
standing that the plaintiff's right of action against
such other tort-feasor, originally subsisting, has
been lost by the lapse of time."

The following additional authorities are directly in point: *Wnek* v. *Boyle* (1953), 374 Pa 27 (96 A2d 857); *Schott* v. *Colonial Baking Co.* (US DC Ark, 1953), 111 F Supp 13; *Godfrey* v. *Tidewater Power Co.* (1943), 223 NC 647 (27 SE2d 736, 149 ALR 1183), and *Cooper* v. *Philadelphia Dairy Products Co.* (1955), 34 NJ Super 301 (112 A2d 308). The latter italicizes its major term—*"The continued subsistence of the common liability is not a sine qua non to enforcement of contribution under the statute."*

The *Schott Case,* above, exhibits a thoroughly considered opinion. The court concluded (p 24):

. "The cases referred to by the court herein point unerringly to the conclusion that the *common liability* need only exist at the time plaintiff's cause of action accrues and need not exist at the time one of the joint tort-feasors seeks contribution. This principle is expressed in the commissioner's note to section 1 of the uniform contribution among tort-feasors act where it is said:

" 'The common obligation contemplated by this act is the common liability of the tort-feasors to suffer adverse judgment at the instance of the injured person, whether or not the injured person elects to impose it.' "

From these basic principles turn to the present situation. Here the primary defendants and the third-party defendant are, by instant pleading, joint tort-feasors. The third-party defendant is a county road commission seeking to deny, not any right against it of the plaintiff, but the right of its fellow tort-feasors to protect or enforce their inchoate right of contribution. In such a case, for reasons made manifest by the difference between the right of action provided by section 224.21 and the right of contribution provided by section 600.2925, it is not surprising that the authorities thus far reported adhere

to this reasoning (*Minneapolis, St. P. & S. S. M. R. Co.* v. *City of Fond du Lac* (CA 7, 1961), 297 F2d 583 [93 ALR2d 1378]):

"The question presented is whether noncompliance with the above statute bars a claim for contribution in a third-party proceeding. We agree with the trial court that noncompliance with the statute is not a bar under the circumstances of this case.

"The right of contribution between joint tort-feasors arises at the time of the concurring negligent acts. Until one of the joint tort-feasors pays more than his proportionate share of the underlying claim, the right remains contingent, subordinate and inchoate. When a tort-feasor pays more than his proportionate share, the right ripens into a cause of action. [citing cases]"

This decision, either as to fact, principle, or reasoned sense, cannot be distinguished from the case at bar. It is the annotated case which precedes an annotator's brief headed "Claim for contribution or indemnification from another tort-feasor as within provisions of statute or ordinance requiring notice of claim against municipality" (p 1385), and was followed in *Royal Car Wash, Inc.,* v. *Mayor and Council of Wilmington* (Del Super, 1968), 240 A2d 144. These excerpts appearing in *Royal* make the point of this dissent:

"This Court has held that the personal injury statute of limitations was not a bar to a defendant's third-party complaint for contribution because the third-party claim is not for recovery of personal injuries but for contribution. *Goldsberry* v. *Frank Clendaniel, Inc.* (1954), 49 Del (10 Terry) 69 (109 A2d 405). * * *

"The Court held the statute inapplicable to contribution because it was inconceivable that the legislature should purport to grant the valuable right of contribution among joint tort-feasors but, for all

practical purposes, place it within the power of the
original plaintiff to decide whether or not it could
be exercised.

"The above reasoning is equally applicable here
because the contribution claim is not an action for
'damages on account of physical injuries, death or
injury to property' and the evil of permitting the
plaintiff to determine whether or not the right to
contribution should be exercised is present.  These
factors preclude the applicability of the notice stat-
ute to a third-party claim for contribution.  This
result has been reached by courts of other jurisdic-
tions.  *Geiger* v. *Calumet County* (1962), 18 Wis 2d
151 (118 NW2d 197); *Minneapolis, St. P. & S. S. M.
R. Co.* v. *City of Fond du Lac* (CA 7, 1961), 297 F2d
583 (93 ALR2d 1378).  *  *  *

"The court stated that the right of contribution be-
tween joint tort-feasors arises at the time of the
concurring negligent acts.  But, until one of the joint
tort-feasors pays more than his proportionate share
of the underlying claim, the right remains contin-
gent, subordinate and inchoate.

"The court further noted that the notice statute
was concerned with the necessity for presentation of
a direct claim against the city as a condition preced-
ent to maintaining an action thereon.  The contribu-
tion claim was contingent and had not ripened into
a cause of action against the city at the time the third-
party complaint was filed.  Failure of the railroad
to present such a contingent claim to the council
could not bar its recovery in the third-party action."

*To summarize:*

1. The Court's present error may be due to insuf-
ficient study of the nature of third-party practice
and the specific purpose of section 600.2925 where,
as here, the pleaded setting is that of a tort action
brought by the plaintiff against primary defendants
with the latter seeking an adjudication by third-
party procedure of an ultimate right to *contribution,*

as against another tort-feasor, should they be compelled to pay damages to the plaintiff. Now that section 600.2925 has lifted the former bar against contribution among joint tort-feasors, the right of contribution in Michigan rests as in any case of contractual relations upon an equitably implied promise arising out of a legally recognized duty to share liability. I think our majority would understand this had the primary defendants been able to plead as against this third-party defendant a *formal* contract to contribute or, if such be the case, a *formal* contract of full indemnity.

2. What Justice ADAMS and his indorsers are telling the profession is that, a right of action for wrongful death having arisen against two joint tort-feasors, one being a road commission derelict under CLS 1961, § 224.21, the other tort-feasor has no way to protect his inchoate right of contribution as against the road commission excepting when he is able to persuade anyone authorized so to do to give, on time, a section 224.21 notice.

The idea is at war with the very purpose of CLS 1961, § 600.2925 in that it permits the plaintiff to choose his defendant and thereby prevent contribution. Too, it points up another unanswered question in wrongful death cases. Consider this:

Suppose the fatally injured victim should linger, unconscious for more than 60 days "after such injury shall have occurred," with no notice given meanwhile. Since we have held that the right of action for wrongful death does not accrue until the date of death (*Coury* v. *General Motors Corporation* [1965], 376 Mich 248), would not the statutory right of action for wrongful death be thereby forestalled, before it accrued, and would not the supposedly assured right of another joint tort-feasor, to contribu-

tion as against the road commission, likewise come to total defeat?

3. CLS 1961, § 600.2925 is Michigan's enactment in substance of the uniform contribution among tort-feasors act, an informative discussion of which appears in 18 Am Jur 2d, Contribution, "c. Effect of Statutes," sections 41–43, pages 60–64; also in *Sattelberger* v. *Telep, supra.* The effect of such statutes is to create rights which did not exist before, and to destroy a valid defense to certain actions for contribution which were available before the enactment thereof. By implying a promise to contribute they have taken away a substantive right from one joint tort-feasor and have created a right in the other tort-feasor who has paid the plaintiff. As said in *Zarrella* v. *Miller* (1966), 100 RI 545 (217 A2d 673, 676), following and quoting *Puller* v. *Puller* (1955), 380 Pa 219 (110 A2d 175, 177):

"The theory is that as between the two tort-feasors the contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done."

4. I refrain purposely from discussion of the question which seems to have absorbed other thinking here. It is whether a statutory action for wrongful death, otherwise rightful in all respects, is subject to defeat by failure of timely notice under CLS 1961, § 224.21. As for that point I prefer to wait until we have decided *Grubaugh* v. *City of St. Johns,* No. 52,309 (leave to bypass granted March 25, 1969). In that case the question we have accepted for review is whether a standard requirement of notice to a municipal corporation, as in section 224.21 provided, is unconstitutional in the application thereof to a person or other claimant who is under legal or actual disability.

I vote to affirm the judgment of the Court of Appeals. All costs should abide the final result.

SUPPLEMENT (July 16, 1969).

Since the foregoing dissent was written Justice ADAMS has delivered to other members of the Court an addendum to the Court's opinion for reversal. In it we behold continued insistence that county boards of road commissioners are somehow immune[4] from third-party actions for *contribution* when the plaintiff in the case has neglected or omitted the giving of a CLS 1961, § 224.21 notice. Again, no authority for ignoring the distinction between the right of action provided in favor of "any person injured" by section 224.21, and such a third-party action, is offered. We are simply asked to read (a) *Hack Investment Co.* v. *Concrete Wall Company* (1959), 356 Mich 416 (an opinion which dealt exclusively with the 1961-repealed contribution statute (Act 303) of 1941 [CL 1948, §§ 691.561–691.564]; an opinion which was handed down in 1959 of a cause commenced in 1955, years before present CLS 1961, § 600.2925 and present GCR 1963, 204 were conceived; an opinion which arose out of claim that the defendant, *not* a public agency or municipal corporation, had negligently damaged certain property to plaintiffs' injury in the sum of $17,058.12), and (b) excerpts taken from the Minnesota case of *White* v. *Johnson* (1965), 272 Minn 363 (137 NW2d 674), of which more later.

*Comment:*

A. The act of 1941 did of course permit the plaintiff to nominate the defendant or defendants of his choice and thus prevent them from obtaining contribution. Such was the evil which no one, including any Brother seated here, has undertaken to deny

---

[4] See the this-or-that penultimate paragraph of the Court's opinion, quoted *post* with comment.

was the primary reason for repeal of the act of 1941 and replacement thereof with section 2925.

Now it may be, perchance, that the primary purpose of section 2925, enacted as it was some 2 years prior to our approval of the General Court Rules of 1963, has not yet fully penetrated the comprehension of all present members of the Court. Yet 5 of us, still seated here, should recall right well the 1962-prepared and 1962-discussed "Committee Comment" which appeared then—and yet appears in all of our annotated statute books—below section 2925. That particular comment was approved by this Court, with the rest of the committee's corresponding commentaries, for submission to the profession as part of the indoctrination meetings of 1962.[5] Whatever one's memory, perhaps a little refreshment, sipped from material utilized during those meetings, will sharpen the judicial understanding.

Attend first the uniform contribution among tortfeasors act which, in 1939, had been promulgated and published by the National Conference of Commissioners on Uniform State Laws (9 ULA pp 230–252), also the strengthening revision thereof which the commissioners introduced in 1955 (9 ULA 1968 Cum Supp pp 125–133). In their prefatory note the commissioners pointed up the need for more uniform laws providing contribution among joint tort-feasors and drew a purposeful bead on the fact that a plaintiff in tort is, absent corrective legislation, "lord of his action." (9 ULA at p 231):

"As an original proposition, all might agree that courts should not lend their aid to rascals in adjusting differences among them. But all tort-feasors are

---

[5] The section 2925 comment is quoted by footnote, *ante* at p 362. With respect to it Professor Hawkins has recently written, in his practice commentary below 33 MCLA, § 600.2925 (p 782):

"Why should the right to contribution turn on whether the plaintiffs elect to sue separately or join together? That is the kind of abuse RJA § 2925 was revised to avoid. See committee comment."

not rascals, in spite of the literal translation of the term as wrongdoers. Most joint and several tort liability results from inadvertently caused damage, although it is almost impossible to draw a practical line between torts of inadvertence and others. It is, then, somewhat ironic to note that at common law contribution is denied among all tort-feasors and is allowed as a matter of course to one who has deliberately chosen to violate a contractual obligation undertaken with others. And this situation is aggravated by the common-law view that the injured person is 'lord of his action' and, when injured by the joint and several tort of two or more, may place the loss where and how he sees fit.

"This item of private, rather than judicial, control of the distribution of loss arising from a common burden of liability has no doubt been largely responsible for the recent trend toward legislative and judicial repeal or modification of the common-law rule. Unfortunately, however, the legislatures in 6 States have confined contribution among tort-feasors to those subjected to joint and several judgment liability, thus virtually leaving to the injured person control of the distribution of loss through contribution. He cannot be compelled to take judgment against tort-feasors whom he does not wish to sue. By refusing to sue or take judgment against one or more of several tort-feasors commonly liable to suffer judgment, even though trial would have proven them equally responsible with him against whom judgment was taken, the injured person may confer immunity from contribution and at the same time secure complete compensation from the luckless tort-feasor whom he wishes to hold liable."

Next, review a part of the July 9, 1963 bulletin issued by the negligence law section of the State Bar of Michigan. In it Professor Joiner[6] presented

---

[6] Co-chairman of the GCR authoring committee and discussion leader of the 1961–1962 statewide meetings of lawyers and judges concerned with prospective effect of the RJA and GCR.

what is probably the best extant compendium of the aforesaid indoctrinal discussions so far as same pertained to section 2925 and Rule 204. Under heading "3. Contribution," Professor Joiner wrote (pp 13 and 14 of bulletin):

"This RJA section 2925 gives a person against whom a joint judgment has been taken who has paid more than his share the right of contribution against other joint tort-feasors for what he has paid. The following sentence, 'joint tort-feasors who are summoned in as third-party defendants pursuant to court rules may likewise be liable for contribution,' was added when the judicature act was revised and Court Rule 204 was adopted. The obvious intention of this addition was to make joint tort-feasors liable for contribution through the third-party practice procedure. Two provisions in the rule point this out. The rule says: 'by right of contribution or otherwise,' and it provides 'who is or may be liable.' These two situations make it clear that it was intended to cover the contribution situation.

"The rule grants no substantive right. The statute gives substantive right to contribution. The rule provides however the procedure. The procedure provided in the rule is through the use of the third-party practice which is a different procedure than was in effect prior to the time the rule was adopted where a joint judgment procedure was required. 'Who is or may be liable' is specifically intended to permit the acceleration of claims for indemnity or contribution. *Jeub* v. *B G Foods, Inc.* (1942), 2 FRD 238."

Lastly, consider the latest descriptive summary Messrs. Honigman and Hawkins have provided (1 Honigman & Hawkins, Mich Court Rules Annotated [2d Ed], 1969 pocket supp at p 83):

"(a) *The effect of RJA § 2925.* Before the contribution among joint tort-feasors' statute was

amended in RJA § 2925, contribution depended upon whether plaintiff's action had been brought against all joint tort-feasors, and had obtained a joint judgment against them. The amendment establishes an additional situation in which contribution can be sought. By the amendment, joint tort-feasors summoned in as third-party defendants are also made liable for contribution. The committee comment, under final report, joint committee on Michigan procedural revision, part II, section 22.25, makes clear the intended effect of this change: 'The next to the last sentence in (1) is inserted to accomplish the result intended in Rule 204.1, that the right of contribution should not depend on whether or not the plaintiff saw fit to sue both joint tort-feasors.' "

B. The only other authority called to attention in the aforesaid addendum is *White* v. *Johnson, supra.* As to that case I agree with Division 2 that it is factually inapplicable here,[7] the Minnesota court having ruled in the ultimate that the timely notice, which had been given to third-party defendant city of St. Paul by primary defendant Johnson, was sufficient to sustain Johnson's third-party complaint as against the city's motion for summary judgment. But there is language in the opinion which, surely, gives no comfort to Justice ADAMS and those voting with him. Contemplate these contextually continuant passages (*White* v. *Johnson,* pp 367, 368, 370, 371 [NW2d 677, 679, 680]):

"2. Before reaching the ultimate question, whether the notice statute permits a defendant in an action to preserve his third-party claims by giving notice himself, the nature of those claims must be examined.

[7] Division 2 pointed out (8 Mich App at 263):
"The supreme court of Minnesota held that the right to recover contribution was not defeated by failure of the plaintiff to give notice where the third-party defendant gave notice to the city of his claim for injury."

Under his third-party complaint, Johnson would be entitled to prove that the city owed him recovery for either contribution or indemnity. Upon the record before us, the facts are not sufficiently revealed to determine whether either claim in fact exists; thus, we can only determine whether a claim for contribution or indemnity or both might possibly be proved upon trial and, if so, whether either claim or both can be preserved against the city by the notice given.

"Indemnity and contribution are both remedies based on equitable principles to secure restitution to one who has paid more than his just share of a liability. They contemplate different measures of recovery, for indemnity secures entire reimbursement and contribution requires equal sharing. Disregarding those situations where a right to indemnity stems from contract, or because one party is only vicariously liable, or because one party followed the directions of another, whether indemnity or contribution possibly lies in this case depends on the conduct of the two wrongdoers and the relative culpability of their actions. * * *

"Conceptually, the giving of notice is an essential element of the cause of action, but realistically, because of the pre-existing right and duty, *liability is created at the instant the tort is committed.* The city is then subject to a liability, and it is no more unexpected that a city might settle a claim before the giving of notice than that private parties might settle before commencement of suit. We have held that a covenant not to sue secured by one wrongdoer does not destroy the common liability necessary for contribution. And the majority of the courts hold that running of the statute of limitations against one defendant on the plaintiff's claim does not bar a suit for contribution against him. *The reasoning underlying these decisions is that joint liability arises the moment the tort is committed and these defenses come into being after the conduct which creates that liability.* Moreover, since the right to recover con-

tribution is based on equitable principles and has the objective of compelling joint wrongdoers to share responsibility for damages inflicted by their tortious acts, the conduct of the person from whom contribution is sought ought to control the right to maintain the action. The objective of contribution has equal validity where one of the tort-feasors is a municipal corporation. To permit a personal defense against the injured plaintiff to destroy the right to contribution from a municipality under the circumstances disclosed in this case would not only frustrate the basic aim of permitting recovery between participating tort-feasors but would deny third-party rights against a municipality where the statute creating it neither expressly nor by fair implication so intends.

"We are of the opinion that these reasons are applicable to a statute making notice a condition precedent *to bringing suit*. Accordingly, we hold that the right *to recover contribution* is not defeated by the failure of the plaintiffs to give notice to the city." (Emphasis that of present writer.)

One specific should bar all thought that *White* v. *Johnson* decides for us, either way, the extent of present application of sections 224.21 and 2925. It lies within *White's* characterization of the Minnesota statute as "making notice a condition precedent to *bringing suit*", which indeed is true. The Minnesota statute includes this mandate of significance:

"No action therefor shall be maintained unless such notice has been given; and unless the action is commenced within one year after such notice",

whereas section 224.21 has never, throughout its legislative history, exhibited any limitation of the liability ordained thereby, or of the right to sue upon that liability, between breach of the statutory,

duty and expiration of the 60-day period.[8] The fact
is that our statute, providing liability as well as
right of suit, sets forth a short—very short—time
limitation against the liability which accrues when
the duty imposed thereby is breached.

C. The choice the Court must make here, as it
mulls and then ruminates two statutes, one of which
(section 224.21) was conceived and written when
liability for contribution among joint tort-feasors
was unheard of in Michigan, and the other (section
2925) being a recent joint determination of the legis-
lature and this Supreme Court to join a nationally
developing movement to provide generally the right
of contribution between and among joint tort-
feasors, is bound to spill over and affect every right
and every cause, arising in part under PA 1964,
No 170 (effective July 1, 1965), where that right or
cause is not only against a municipal corporation, a
political subdivision, or the State, but also has arisen
against some other or others constituting joint tort-
feasors with such corporation, subdivision, or sov-
ereign. The choice accordingly had better be right,
these days of multi-car collisions and multi-parties
litigant considered.

D. Where finally does Morgan v. McDermott leave
the trial bench and bar? The majority answers—at
dire risk of communicating straddler's itch—only
this way:

"Third-party plaintiffs are in this dilemma: either
governmental immunity has not been waived as to
an action for contribution such as they assert, or, if
reliance is placed on the statute, third-party plain-

---

[8] The language of the notice requirement set forth in section
224.21 goes back to the amendment of the same section (21) by
the act of 1919, No 388, pp 687, 688. It has always included the
"subject to any liability under this section" enlightener of legisla-
tive purpose.

tiffs cannot insist on its benefits because the statutory 60-day notice was not given."

I vote again to affirm.

DETHMERS, J., concurred with BLACK, J.

T. G. KAVANAGH, J., did not sit.